**FILED**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MAR 1 1 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

JANET HOWARD
P.O. BOX 1454
SPOTSYLVANIA, VA 22553
(540) 760-8478

        Plaintiff

v.

CARLOS GUTIERREZ, SECRETARY
GLENN KRIZAY, DIRECTOR, OEA
TODD WILLIS, ASSISTANT DIR. OEA
ROBERTO LOPEZ, HUMAN RESOURCES
U.S. DEPARTMENT OF COMMERCE
14TH AND CONSTITUTION AVE., NW
WASHINGTON, D.C. 20230

        Defendant.

Case: 1:08-cv-00421
Assigned To : Friedman, Paul L.
Assign. Date : 3/11/2008
Description: TRO/PI



## COMPLAINT

(Notice of Proposed Removal) Intentional Infliction of Emotional Distress; Compensatory

Damages; Injunctive Relief and Declaratory Judgment.

### JURY TRIAL DEMANDED

This is an employment discrimination suit brought under federal law prohibiting

discrimination and retaliation in federal employment. *See* Title VII of the Civil Rights Act of

1964, 42 U.S.C. 2000e-5(f) (3); 42 U.S.C. 2000e-16(c); Plaintiff seeks compensatory damages,

injunctive relief, and other costs.

In her Motion for a Preliminary Injunction, plaintiff asks this court to order the Defendant, the United States Department of Commerce (DoC or Defendant), to cease and desist actions to remove plaintiff from employment; and to immediately cease and desist all discriminatory and retaliatory employment actions taken against Ms. Howard because of her well recognized activity at DoC opposing race discrimination; her leadership role in the pending lawsuit against the DoC Janet Howard et. al. vs. Carlos Gutierrez, Civil Action No. 05-1968 (JDB); and her pending case against DoC Janet Howard vs. Carlos Gutierrez, Civil Case No. 1:04-cv-00756-PLF.

## PARTIES

1.   Carlos Gutierrez, Secretary of the U.S. Department of Commerce.

2.   Glenn Krizay, Director of the Office of Enforcement Analysis (OEA), U.S. Department of Commerce.

3.   Todd Willis, Assistant Director Office of Enforcement Analysis (OEA), U.S. Department of Commerce.

4.   Roberto Lopez, International Trade Administration, Human Resources, U.S. Department of Commerce.

## JURISDICTION

5.   This Court has subject matter jurisdiction over this case for immediate action pursuant to Federal Rule of Civil Procedure.

6.   For the reasons alleged particularly below, this Court has personal jurisdiction over the U.S. Department of Commerce.

## ALLEGATIONS OF FACT COMMON TO ALL CLAIMS

7.    Plaintiff is a 25 year federal employee at the Department of Commerce (DoC) with the Bureau of Industry Security in the Office of Enforcement Analysis.

8.    Plaintiff served as the class Agent in the class complaint (Janet Howard, et. al. vs. Carlos Gutierrez, Secretary of Commerce).

9.    Plaintiff has **two cases pending before two U.S. District Court Judges**. An ADA jury trial is scheduled for April 21, 2008 before Judge Freidman (Civil Case No. 1:04-cv-00756-PLF), and a Multi-party case is pending before Judge Bates (CV: 05-1968).

10.    Plaintiff has been performing the same job for 25 years.  During those 25 years, Plaintiff has maintained an exemplary record, and even received a **"Bronze Medal Award"** early February 2007 for Superior Federal Service in early 2007.

11.    On or about February 16, 2007 Plaintiff made a whistleblowing complaint against her employer to the Office of Special Counsel, Case No. (Re: OSC File No: MA-07-0753).

12.    On or about March 27, 2007, one month later, Plaintiff's supervisor put her on a Performance Improvement Plan (PIP) asserting deficient performance.

13.    On or about May 2007 Plaintiff reported Department of Commerce's egregious practice to Congress at a Tribunal Hearing on Capitol Hill.

14.    On or about July 13, 2007, Plaintiff amended her complaint to include a upsurge of harassment and retaliation.

15. On November 13, 2007, Plaintiff was put on another Performance Improvement Plan (PIP) subsequent making Freedom of Information Act request about practices within her office.

16. On or about November 27, 2007, Todd Willis in an email told Plaintiff she had failed the PIP.

17. A week Later Plaintiff received a similar email from Todd Willis telling Plaintiff she had failed the PIP.

18. On or about November 30, 2007, Plaintiff reported the harassment and rash of threatening emails to Commerce Employees Assistance Program (EAP) to obtain some relief from the upsurge of harassment.

19. On two additional occasions, Plaintiff sought help from EAP, with no success.

20. Plaintiff continues to seek medical refuse and relief in Commerce Health Unit as the result of the continuous harassment.

21. On numerous occasions, Commerce health unit Nurse (Jean Ovedovitz) sought relief for Plaintiff because of her volatile blood pressure and chest pains and shortness of breath via ambulance, pov or taxi to George Washington University Hospital, all as a result of the harassment that Plaintiff receives from a hostile work environment.

22. On or about December 12, 2007 Plaintiff amended multiple party complaint before Judge Bates Case No. CV: 05-1968.

23. On or about January 2008, Plaintiff's attorney in the ADA case (Fred Goldberg) wrote to the Defendant directing them to halt the upsurge of harassment against Plaintiff.

24. On February 27, 2008 Plaintiff's first line supervisor Todd Willis present Ms. Howard (Plaintiff) a letter of "Proposed Removal" from federal service (witnessed by Roberto Lopez).

25. The two Commerce representatives, Todd Willis and Roberto Lopez who presented Plaintiff the Proposed Removal from federal service to are both are named Defendants in Plaintiff's prior active Equal Employment Opportunity (EEO) complaints.

26. In Civil Action No. 04-0756(PLF) before Judge Friedman includes testimony from Dr. Reginald Wills (former Commerce physician) about a meeting he was asked to attend with members from the Office of General Counsel (OGC), Office of Human Resource (OHRM), Health Unit, Plaintiff's supervisor and other officials in which Deanna Sheppard (OHRM) said **"THIS IS OUR STRATEGY TO GET RID OF JANET"**.

27. Commerce OGC attorney gave Dr. Wills, via email, the language to be used to alter Plaintiff's medical records in favor of the agency, when Dr. Wills refused, he was fired.

28. Dr. Wills in his deposition (Civil Case No. 1:04-cv-00756-PLF) stated that he believed Ms. Sheppard thought, if she could rid Commerce of Plaintiff Howard, the class would go away.

29. According to testimony from Dr. Wills, Plaintiff was referred to by Deanna Sheppard as the **"ring leader"**, and the other two class agents (Joyce E. Megginson & Tanya Ward Jordan) as the **"library crew"**, **because they meet in the library to discuss discrimination and civil rights.**

5

## RELIEF

Plaintiff requests the Court to issue a Restraining Order and Preliminary Injunction to the government to cease and desist any attempts to remove Plaintiff Janet Howard from her 25 year government job, and stop the retaliation, intimidation, and harassment. Plaintiff seeks compensatory damages of $300,000 for the intentional infliction of emotional distress and mental torment.

## JURY DEMAND

Trial by Jury is demanded on all issues for which a jury trial is available.


Respectively submitted,


*Janet Howard* Date: 3 -11-08

Janet Howard
Plaintiff Pro Se
P.O. Box 1454
Spotsylvania, VA 22553
(540) 760-8478

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

D
08 - 421
PLF

| I (a) PLAINTIFFS _Janet Howard_ | DEFENDANTS _Carlos Gutierrez, Secretary_ |
|---|---|

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _88856_
(EXCEPT IN U.S. PLAINTIFF CASES)

_Spotsylvania, VA 22553_

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)

Case: 1:08-cv-00421
Assigned To : Friedman, Paul L.
Assign. Date : 3/11/2008
Description: TRO/PI

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

_P.O. Box 1454_
_Spotsylvania, VA 22553_

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ☐ A. Antitrust | ☐ B. Personal Injury/ Malpractice | ☐ C. Administrative Agency Review | ☒ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br><br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

## ☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Immigration**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus- Alien Detainee
☐ 465 Other Immigration Actions

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant

☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.

☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not Administrative Agency Review or Privacy Act)

⑥

| □ G. *Habeas Corpus/ 2255* | □ H. *Employment Discrimination* | □ I. *FOIA/PRIVACY ACT* | □ J. *Student Loan* |
|---|---|---|---|
| □ 530 Habeas Corpus-General <br> □ 510 Motion/Vacate Sentence | □ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) <br><br> *(If pro se, select this deck)* | □ 895 Freedom of Information Act <br> □ 890 Other Statutory Actions (if Privacy Act) <br><br> *(If pro se, select this deck)* | □ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| □ K. *Labor/ERISA (non-employment)* | □ L. *Other Civil Rights (non-employment)* | □ M. *Contract* | □ N. *Three-Judge Court* |
|---|---|---|---|
| □ 710 Fair Labor Standards Act <br> □ 720 Labor/Mgmt. Relations <br> □ 730 Labor/Mgmt. Reporting & Disclosure Act <br> □ 740 Labor Railway Act <br> □ 790 Other Labor Litigation <br> □ 791 Empl. Ret. Inc. Security Act | □ 441 Voting (if not Voting Rights Act) <br> □ 443 Housing/Accommodations <br> □ 444 Welfare <br> ☑ 440 Other Civil Rights <br> □ 445 American w/Disabilities-Employment <br> □ 446 Americans w/Disabilities-Other | □ 110 Insurance <br> □ 120 Marine <br> □ 130 Miller Act <br> □ 140 Negotiable Instrument <br> □ 150 Recovery of Overpayment & Enforcement of Judgment <br> □ 153 Recovery of Overpayment of Veteran's Benefits <br> □ 160 Stockholder's Suits <br> □ 190 Other Contracts <br> □ 195 Contract Product Liability <br> □ 196 Franchise | □ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☑ 1 Original Proceeding    □ 2 Removed from State Court    □ 3 Remanded from Appellate Court    □ 4 Reinstated or Reopened    □ 5 Transferred from another district (specify)    □ Multi district Litigation    □ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

*Proposed Removal from Job* -42 US C ~~~~ 42 US 2000 E

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS □ ACTION UNDER F.R.C.P. 23 | **DEMAND $** 50,000 | Check YES only if demanded in complaint JURY DEMAND: ☑ YES   □ NO |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    □ YES  ☑ NO    If yes, please complete related case form.

DATE *3-11-08*    SIGNATURE OF ATTORNEY OF RECORD    *Jane f Howard*

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

# EXHIBIT 1



**UNITED STATES DEPARTMENT OF COMMERCE**
**Bureau of Industry and Security**
Washington, D.C. 20230

November 13, 2007

Memorandum for:    Janet Howard
                   Export Compliance Specialist
                   Operations Support Division
                   Office of Enforcement Analysis

From:              Todd Willis
                   Assistant Director
                   Office of Enforcement Analysis

Subject:           Performance Improvement Plan

This memorandum is to notify you that you are not meeting the performance standards of your Export Compliance Specialist, GS-1801-12, position because your performance has fallen to an unsatisfactory level (Level 1) in three Critical Elements. Your unsatisfactory performance has adversely affected the efficiency of the service and cannot continue. Consequently, I am providing you with a Performance Improvement Plan (PIP) to allow you an opportunity to raise your performance to the satisfactory level (Level 2). This memorandum identifies your performance deficiencies and outlines the steps you will need to take under the PIP to raise your performance level to Level 2. The PIP will become effective on November 13, 2007, and will continue for 60 days, ending on January 11, 2008.

## I.    Background

At the end of the Fiscal Year (FY) 2006 rating period, you received a Level 2 rating and were notified of concerns with your performance, particularly with regard to Post-Shipment Verifications (PSVs) and Review of Shipper's Export Declarations. During your FY 2007 progress review conducted on February 1, 2007, your then-supervisor, Tom Andrukonis, discussed with you his concerns that your performance problems persisted.

By memorandum dated March 27, 2007, Mr. Andrukonis determined that your performance had fallen to an unacceptable level and he notified you of his decision to place you on a 40-day Performance Improvement Plan (PIP) to assist you in raising your performance. The PIP memorandum detailed your performance deficiencies and the steps you would need to take to raise your performance to an acceptable level. Shortly thereafter, you took 30 days of leave, which postponed the PIP's implementation until April 27, 2007, when you returned.

As a result of personnel changes within our office, I was your third first-level supervisor during the course of your PIP. I became your supervisor on July 23, 2007 and was able, for only a few days, to observe first-hand your performance under the PIP. While you did improve in some areas, such as customer service, you did not pass the entire PIP. However, I am determined to



provide you every opportunity to improve your performance. Toward that end, I have rated your performance unsatisfactory for FY 2007 and am issuing you a revised PIP. This PIP allows you further opportunity to raise your performance level while also allowing me the opportunity to evaluate fully and first-hand your performance. Your performance deficiencies are set out below, as are the steps you will need to take to raise your performance. The PIP becomes effective November 13, 2007 and will last 60 days, until January 11, 2008.

## II.    Performance Deficiencies

As an Export Compliance Specialist, you are responsible for evaluating export transactions. Your duties include, among others, adding and deleting parties of concern to the Watch List maintained in BIS's database. You are assigned 41 countries and your duties are correlated to export transactions with entities in those 41 countries. Among your assigned countries is the United Arab Emerites (UAE). Export transactions to certain countries, including the UAE, are of highest priority to BIS. The UAE is your highest priority country. The Agency employs BIS Special agents in these priority countries as Export Control Officers (ECOs) who, along with other duties, conduct end-use checks.

As an Export Compliance Specialist, your duties include identifying entities of interest and referring them to the ECO to conduct an appropriate end-use check. End-use checks involve in-country reviews and verifications, also known as pre-license checks (PLCs) and post-shipment verifications (PSVs).[1] After completing these reviews and verifications, the ECOs report relevant information back to the Export Compliance Specialist. Based upon the information received from the ECO, it is your responsibility to make final determinations and appropriate recommendations, and to take proper actions on exports transactions under your review. In that respect, you must effectively communicate and coordinate with all officials conducting in-country reviews/verifications, particularly the ECO assigned to the UAE.

### A.    Critical Element 2: Export License Applications Review and Pre-License Checks

Under this Critical Element, your responsibilities include, among others, reviewing export license applications and initiating pre-license checks. There are seven major activities in this Critical Element, and you failed to perform at the acceptable level in (Level 2) in one of these activities.[2] This activity is of such significance, that unacceptable performance in the activity constitutes unacceptable performance for the entire Critical Element.

Your fundamental job duties require you to initiate appropriate and sufficient pre-license checks

---

[1] When there is no ECO employed in-country, BIS will send an appropriate official abroad to conduct the necessary review and verification.

[2] This activity is: appropriate and sufficient quality pre-license checks initiated to ensure adequate coverage of sensitive items and countries.

(PLCs). These duties include screening export license applications for countries assigned to you and determining whether to refer an application for a pre-license check (PLC). Your determinations should be based on several factors such as, but not limited to, whether the entity is known/unknown, the quantities of items to be exported, the product at issue and the dollar amounts. Your referrals initiate the PLC process, but the actual check is performed in-country and occurs *before* the exports are licensed and shipped.

To be fully successful, you must have initiated at least 15 PLCs. During the rating period, you initiated only nine (9) PLCs. The 9 you initiated fall far short of this metric and constitute unacceptable performance. In addition, of the 9 PLCs you initiated, eight (8) were untimely. In fact, these 8 recommendations were made between 10 and 69 days after BIS's receipt of the application. Thus, your average for initiating PLCs, was 28-days. This is unacceptable because you are required to make your license recommendations in an average of six calendar days.

Finally, of the 9 PLCs you initiated during the rating period, 6 – or 67% – were identified for end-use check by other agencies through the interagency review process.[3] Thus, only 3 of the PLCs were based on your independent review, research and analysis. Indeed, I have significant concerns about the quality of your review of license applications for referral for PLC. For the period April 27, 2007 and July 27, 2007, you received approximately 136 license applications for the UAE. After sampling 70 of those applications, I discovered that 10 were unknown entities and you had not referred any for PLC. This failure to refer unknown entities – particularly for the UAE – raises serious issues about the quality and attention you devoted to the license applications you reviewed. For all of these reasons, I find your performance under this Critical Element unacceptable.

B.    Critical Element 3: Post-Shipment Verifications and Review of Shipper's Export Declarations

Under this Critical Element, your responsibilities include, among others, initiating post-shipment verifications (PSVs) and reviewing shipper export declarations. PSVs help the U.S. Government ensure that exported items are being used in accordance with U.S. export control regulations and the terms of the export license. There are six major activities in this Critical Element, and you have failed to perform at the acceptable in level in one of those activities.[4] This activity is of such significance, that unacceptable performance in the activity will result in unacceptable

---

[3] The interagency process is the review of export license applications conducted by federal authorizing agencies, including the Departments of Defense, State and Energy. Each of these agencies reviews license applications according to their own missions and priorities. This review includes identifying items and/or parties to the export transaction that are of concern. The agencies make recommendations for each export transaction through the licensing process.

[4] This activity is: appropriate and sufficient quality post-shipment verification are initiated from BIS licenses and from unlicensed exports (e.g., NLR, GBS etc.) to ensure adequate coverage of sensitive items and countries.

performance for the entire Critical Element.

One of your fundamental job duties requires you to initiate PSVs from BIS licensed and unlicensed exports. Toward that end, you must generate a cable to the official in-country responsible for conducting the end-use check. The cable must detail all relevant information about the export transaction so that the in-country official may take appropriate action.

During the rating period, you did not initiate an appropriate quantity of PSVs from BIS licensed and unlicensed exports. To be fully successful, you needed to initiate at least 35 PSVs, 10 to 15 of which had to be initiated from exports made **not** under a validated BIS license. Although you initiated 11 PSVs for exports not under a BIS license, you only initiated a total of 18 PSVs. This is far lower than the fully successful level, so much so that it constitutes unacceptable performance. Notably, of the remaining **7** PSVs you referred for licensed items, 6 – or nearly 86% – were the result not of your independent review, research and analysis, but instead were identified to you during the interagency process. For all of these reasons, your performance under this Critical Element is unacceptable.

I also note serious concerns about the quality of your referral cables for PSV. Cables you submitted to me as final were regularly inaccurate, unclear, incomplete and/or untimely and required major corrections and/or revisions. I have had to return cables to you for correction, and you have failed to make those corrections or did not make them in a timely fashion. As a result of your inaction on such cables, the PSVs remain uninitiated.

C.    Critical Element 4: Research and Analysis of Assigned Export Enforcement Projects

Under this Critical Element, your responsibilities include, among others, researching and analyzing export enforcement projects assigned to you. There are six major activities in this Critical Element, and you failed to perform at the acceptable level in (Level 2) in one of those activities.[5] This activity is of such significance that unacceptable performance in the activity constitutes unacceptable performance for the entire Critical Element.

You were required under this Critical Element to research, gather and analyze export controls information from available resources. In addition, you were to monitor closely the geographic areas assigned to you and to gather, analyze and maintain information on weapons of mass destruction programs, transshipment points, terrorism and proliferation issues on assigned countries of concern. However, you failed to do so and instead relied too heavily upon the interagency process.

---

[5] This activity is: innovative suggestions are made to improve long-term and short-term effectiveness of export control system. Assigned geographic areas are closely monitored; information is gathered, analyzed and maintained on weapons of mass destruction programs, transshipment points, terrorism and proliferation issues on assigned countries of concern to enhance the quality of end-use checks initiated.

During the rating period, you initiated 27 end-use checks, but only 15 were based on your own analysis of research you conducted. The remaining 12 – or 44 % – were identified to you during the interagency process. This is unacceptable performance of your research and analysis duties.

Given the performance deficiencies described above, it is necessary to place you on a 60-day PIP to raise your performance to an acceptable level (Level 2).

## III.    Performance Improvement Plan

Below I have outlined the particular duties you must perform relative to each Critical Element to raise your level of performance to an acceptable level (Level 2).

### A.    Critical Elements 2:  Export License Applications Review and Pre-License Checks

To raise your performance to the acceptable level, you must review each export license application for possible pre-license checks (PLC), with particular attention on your priority country, the UAE. In connection with this duty, you must maintain a weekly log for all license applications for the UAE. This log must show the date you receive the application; the date you review the application; whether the party is known/unknown, the recommendations you make for the application; and the date you make your recommendation. A sample log is attached to this PIP and is available for you in electronic copy as well. Failure to review license applications or maintain the weekly logs as described above three or more times will result in unacceptable performance.

To perform at the acceptable level under this PIP, you must also refer a total of at least three (3) PLCs. Of those three PLCs, at least two (2) must be for the UAE and at least one (1) must be for one your remaining countries. Only those PLCs that you identify through independent research and analysis will count towards this total. Other recommendations, such as through the interagency process or by the licensing officer, will not count towards this total. Your PLC referrals must be timely, that is, within at least 3 business days of BIS's receipt of the license application. Failure to meet these metrics or issue timely PLC referrals two (2) or more times will result in unacceptable performance.

### B.    Critical Elements 3:  Post-Shipment Verifications and Review of Shipper's Export Declarations

To raise your performance to the acceptable level, you must initiate at least five (5) total PSVs. Although your first priority for these PSVs must be the UAE, you should initiate PSVs for a variety of your countries so that you do not overload the UAE ECO. Of the five PSVs you initiate, two (2) must be no-license required (NLR) checks and the remaining three (3) must be licensed PSVs. At least three (3) of the five PSVs must be for the UAE.

Only those PSVs that you identify through independent research and analysis will count towards these totals. Recommendations for PSVs made through other means, such as the interagency

5

process or by the licensing officer, will not count towards your totals.

C.     Critical Element 4:  Research and Analysis of Assigned Export Enforcement
        Projects

As set out above for Critical Elements 2 and 3, you must refer sufficient, quality PLCs and
PSVs.  With respect to your referrals, they must be selected after thoughtful research and
analysis.  Your reasons for the referrals, including the research and analysis you conducted, must
be fully presented to me in a brief 1-2 paragraph memo.  I must receive each justification memo
before you initiate the PLC or PSV.  Your justification memos must contain few to no spelling
or grammar errors.  The memos must be comprehensive and organized appropriately.  These
memos need not be formal, but rather can be transmitted via email.  I have attached a sample
justification memo/email as guidance.  Failure to follow these standards two (2) or more times
will result in unacceptable performance.

Effective November 12, 2007, you have a 60-day period in which to demonstrate acceptable
performance in Critical Elements 2, 3, and 4.  Failure to meet any of the standards outlined
above will constitute failure of your Performance Improvement Plan, resulting in a Level
1/Unacceptable Performance rating.  During this 60-day period, I will carefully monitor your
performance to determine if you are performing in accordance with the standards listed above.  I
will also meet with you periodically during the PIP period to provide you feedback and guidance
as needed.  At the end of the 60-day period, if your performance is unacceptable in any one of
the Critical Elements identified above, I will determine that your performance continues to be
below the acceptable level and I will initiate the appropriate performance-based action, which
may include removing you from your position and the Federal service.

If your performance is acceptable at the end of the 60-day period, you must maintain this
acceptable level of performance for a period of twelve months from the date this PIP is initiated.
Failure to do so will result in unacceptable performance (Level 1) and may form the basis of a
performance-based action to demote you or remove you from your position and the Federal
service without providing you an additional performance improvement period.

If you believe that you have a medical condition that prevents you from performing the duties of
your position at an acceptable level and you wish me to consider reasonable accommodation,
you must provide to me a written request in accordance with Department Administrative Order
(DAO) 215-10, Reasonable Accommodation for Disabilities in Employment.  You must provide
me with (a) medical documentation of your condition, (b) the effect of this condition on your
work, and (c) specific actions that I could take to assist you in performing at Level 2.  Any
accommodation requested will be carefully reviewed to determine if it can be implemented
without undue hardship to the agency or risk to you or others.  If necessary, I may request the
assistance of the Department's Medical Officer in evaluating any medical documentation that
you submit.  To receive full consideration, documentation of any medical condition should be
received no later than thirty (30) calendar days from your receipt of this notice.

If you feel that you have a personal or medical problem that may be impeding your ability to perform your duties at Level 2, you may want to consider seeking assistance through the Employee Assistance Program (EAP). This is a confidential program, and you may reach a counselor by calling 202-482-1569 to schedule an appointment.

I hope you will use these suggestions, as well as the assistance we are providing to you, to improve your performance to Level 2 during the performance improvement plan.

If you have any questions concerning the contents of this notice, the performance standards involved, or my expectations of you now or at any time, please see me immediately. If you have any questions about this performance improvement plan or require additional guidance on implementing the provisions of it, please let me know as soon as questions arise. Keep in mind that it is important to refer to this plan throughout the performance improvement plan period.

Please sign and date the receipt acknowledgment copy of this memorandum. Your signature merely indicates that you have received a copy of this memorandum; it does not indicate that you agree or disagree with its contents. However, your refusal to sign the receipt acknowledgment copy does not nullify the effect of this memorandum; i.e., placing you on a performance improvement plan for 60 calendar days.

RECEIPT ACKNOWLEDGED:

_Employee Refused to Sign_
Employee

_Todd E. Will_    11/3/07

_____
Date of Receipt

If you feel that you have a personal or medical problem that may be impeding your ability to perform your duties at Level 2, you may want to consider seeking assistance through the Employee Assistance Program (EAP). This is a confidential program, and you may reach a counselor by calling 202-482-1569 to schedule an appointment.

I hope you will use these suggestions, as well as the assistance we are providing to you, to improve your performance to Level 2 during the performance improvement plan.

If you have any questions concerning the contents of this notice, the performance standards involved, or my expectations of you now or at any time, please see me immediately. If you have any questions about this performance improvement plan or require additional guidance on implementing the provisions of it, please let me know as soon as questions arise. Keep in mind that it is important to refer to this plan throughout the performance improvement plan period.

Please sign and date the receipt acknowledgment copy of this memorandum. Your signature merely indicates that you have received a copy of this memorandum; it does not indicate that you agree or disagree with its contents. However, your refusal to sign the receipt acknowledgment copy does not nullify the effect of this memorandum; i.e., placing you on a performance improvement plan for 60 calendar days.

RECEIPT ACKNOWLEDGED:

_Employee Refused to Sign_
Employee                                                                    Date of Receipt

_[signature]_  11/3/07

7

# EXHIBIT 2



Law Offices
## Fred B. Goldberg, P.C.
7101 Wisconsin Avenue
Suite 1201
Bethesda, MD 20814

Tel. 301-654-3300
Fax 301-654-1109
FBG@fredbgoldberg.com

January 8, 2008

**Via facsimile**

Brian P. Hudak, Esq.
U.S. Attorney's Office for the District of Columbia
555 Fourth Street, NW
Washington, D.C. 20530

RE: Janet Howard v. Gutierrez

Dear Mr. Hudak:

My client Janet Howard, a 25 year Export Compliance Specialist in the Office of Enforcement Analysis, has made me aware that her recently hired first line supervisor, Todd Willis, has placed her on a questionable 6 month Performance Improvement Plan (PIP).

She asked me to make you aware of the upsurge in harassment she is experiencing since being placed on the PIP on November 13, 2007 with the threat of loss of employment at the U.S. Department of Commerce.

Specifically, Mr. Willis has embarked on a campaign of rejecting each and every weekly and monthly report Ms. Howard authors or submits concerning her work Since being placed on the PIP on November 13., 2007, Ms. Howard has, on average, received two to three threatening emails per week. The first one came two days after being placed on the PIP when Mr. Willis informed Ms. Howard that she had failed the PIP. When she complies with his suggested changes he rejects it again. Mr. Willis seems to take delight in adverse reports on each element of each week's PIP report, transparently preparing to find that she has not met its objectives from the outset.

Whenever Mr. Willis is away and another person acts in his place temporarily, her work is accepted without barely a correction. Mr. Willis has exposed Ms. Howard to constant actions one could only assume are geared toward inflicting additional levels of complications to her chronic refractory hypertension and PTSD.

Ms. Howard has informed me that this type of harassment is typical when individual exercises their rights under the EEOC process. Ms. Howard has made her family aware of the ongoing harassment by Mr. Willis and, if she is further injured by this harassment, Mr. Willis and the Bureau of Industry Security will be held responsible.

Very truly yours,

Fred B. Goldberg

FBG/me
cc: Janet Howard

# EXHIBIT 3



**UNITED STATES DEPARTMENT OF COMMERCE**
**Bureau of Industry and Security**
Washington, D.C. 20230

February 27, 2008

| | |
|---|---|
| Memorandum for: | Janet Howard<br>Export Compliance Specialist<br>Operations Support Division<br>Office of Enforcement Analysis |
| From: | Todd Willis<br>Assistant Director<br>Office of Enforcement Analysis |
| Subject: | <u>Notice of Proposed Removal</u> |

This memorandum serves as official notice that I propose to remove you from your position as an Export Compliance Specialist, GS-1801-12, Office of Enforcement Analysis (OEA), Bureau of Industry and Security (BIS), U.S. Department of Commerce (DOC) and the Federal Service effective no earlier than thirty (30) days from your receipt of this notice. I am proposing your removal for unacceptable performance and to promote the efficiency of the Service, in accordance with Title 5 of the Code of Federal Regulations, Chapter 43.

## Background

The Office of Export Analysis' mission is to carry out the Agency's export enforcement responsibilities as mandated by the Export Administration Act of 1979 (the Act) and its implementing regulations. These responsibilities include: developing and implementing enforcement policy; collecting, analyzing and evaluating intelligence about illegal diversions of U.S. origin commodities and technology; identifying and investigating allegations of violations of national security and foreign policy controls; coordinating intelligence and enforcement activities of the U.S. and foreign governments; liaisoning with legislative committees with oversight of the Act; and liaisoning with the business community to carry out the Act's tenets.

As an Export Compliance Specialist, you are responsible for, among other duties, reviewing export license applications and, where appropriate, recommending end-use checks (EUCs) to the Division Director. In that regard, you must conduct independent research and analysis of information collected from public and intelligence resources. Based on this research and analysis, you must select and recommend candidates for either pre-license checks (PLCs) or post-shipment verifications (PSVs). Your selections and recommendations must be based on the independent research and analysis you conducted. Your Export Compliance Specialist responsibilities support BIS's mission by refining the Agency's targeting and analysis of end-use checks.



In Fiscal Year (FY) 2007), you had three different first-level supervisors, including your former supervisor, Tom Andrukonis. While your first-level supervisor, Mr. Andrukonis determined that your performance had declined to an unacceptable level and he implemented a Performance Improvement Plan (PIP) for you. Mr. Andrukonis' PIP began on April 27, 2007 and ended on July 27, 2007.

I became your first-level supervisor on July 23, 2007 with five days remaining on the PIP. I wished to observe, first-hand, your performance before making any determinations about the PIP or your employment. Thus, I deferred any decisions until the Fiscal Year ended. By that time, I had had sufficient opportunity to evaluate your performance. I noted that your performance improved in some of the areas that caused Mr. Andrukonis concern. However, I also determined that overall, your performance was unacceptable. As a result, I rated your performance unacceptable for FY 2007 and implemented a new 60-day PIP period to allow you an additional opportunity to further improve your performance and raise it to a satisfactory level. This PIP period began November 13, 2007 and ended on January 11, 2008. Your performance again did not improve; therefore I am proposing that you be removed from your position and the Federal Service.

**Reason 1:**   **Unacceptable Performance of Critical Element 2: Export License Applications Review and Pre-License Checks (PLC)**

Specification 1: The PIP required that you review each export license application for possible pre-license checks (PLCs) with particular attention to your priority country, the United Arab Emirates (UAE). In connection with this duty, you were to maintain a weekly log for all license applications for the UAE. The PIP provided clear guidelines setting out the precise information to be included on the logs. Also, a sample log was provided to you in hard copy and electronic formats. The PIP warned that failure to maintain a proper weekly log three (3) or more times during the PIP would result in unacceptable performance on this Critical Element.

The November 13, 2007 through January 11, 2008 PIP period spanned nine (9) weeks. During those 9 weeks, BIS received 41 license applications for the UAE.

In total, you submitted only four (4) weekly logs. You failed to submit any weekly logs in the last five (5) weeks of your PIP.

Of the 4 logs you submitted, every one was incomplete. Although I provided you guidance and assistance in both the sample log and e-mail feedback, none of the 4 logs you submitted was correctly prepared under the PIP's standards.

The log you submitted for the week ending November 16, 2007 covering the period November 13 - 16, 2007[1] contained no entries in any columns despite BIS receiving six (6) UAE license applications that week.

---

[1] The November 26, 2007 log reflects a shortened week, given the Veterans' Day holiday.

The log you submitted for the week ending November 20, 2007 covering the period November 17 - 20, 2007[2] contained four (4) UAE license applications. Notably, BIS received all four (4) of these applications *before* the PIP began. In addition, BIS received two (2) license applications during the November 17 - 20, 2007 time period, but neither appear on your log as having been reviewed.

The log you submitted for the week ending November 30, 2007 covering the period November 24 - 30, 2007, contained one (1) UAE license application. However, BIS also received that license application *before* the PIP began. Significantly, BIS received five (5) UAE license applications for the period November 20 – 30, 2007, but none appear on your log as having been reviewed.

The log you submitted for the week ending December 18, 2007 covering the period from December 1 - 18, 2007 contained five (5) entries for UAE license applications. Four of those five applications, however, were also received *before* the PIP began. Only one of the 5 entries on your log represents a UAE license application received during the December 1 - 18, 2007 period. Significantly though, during that time period, BIS received eleven (11) UAE license applications. Of those 11, only the previously mentioned single entry appears on your log as having been reviewed.

Finally, for the remainder of the PIP period (December 19, 2007 through January 11, 2008), you submitted no logs reflecting any UAE license application reviews. Notably, during that period, BIS received an additional 17 UAE license applications.

The PIP specifically warned that your performance would be unacceptable if you failed to maintain proper weekly logs three (3) or more times during the PIP period. Given the above, during the PIP period, you failed 9 times to maintain proper weekly logs, including failing altogether to submit five different weekly logs. As a result, your performance of this duty under Critical Element 2 is unacceptable.

> Specification 2: The PIP also required you to review each export license application for a possible PLC with particular attention to your priority country, the UAE, and warned that your failure to review three (3) or more such licenses during the PIP would result in unacceptable performance on this Critical Element. On several occasions during the PIP period, your Team Lead, Jay Hatfield, and I provided you a suggested list of incoming UAE applications to assist you in identifying potential PLCs.
>
> Based on the information you provided within your logs, you reviewed a total of ten (10) UAE license applications during the PIP. From November 13, 2007 to January 11, 2008, BIS received 41 license applications for the UAE. A review of your logs revealed that nine (9) of the 10 licenses you reviewed were received by BIS *before* the PIP began. Regardless, during the PIP period, you were to review all incoming UAE license

---

[2] The November 20, 2007 log reflects a shortened week, given the Thanksgiving holiday.

applications, but you reviewed only one (1) out of the 41 received. In total, you failed to review forty (40) UAE license applications during the PIP period.

The PIP warned that failure to review three (3) or more UAE licenses would be considered unacceptable performance under this Critical Element. You failed to review 40 UAE license applications. Thus, your performance of this duty under Critical Element 2 is unacceptable.

Specification 3: Under the PIP, you were required to refer at least 3 PLCs which you identified through your own independent research and analysis. At least two (2) of the PLCs had to be for end-users in the UAE and one (1) had to be for an end-user in one of your other assigned countries. The PIP warned that PLC requests had to be timely, meaning they had to be referred within at least three (3) business days of BIS's receipt of the application. Failure to meet these metrics or issue timely PLC referrals 2 or more times during the PIP would result in unacceptable performance.

During the PIP period you referred a total of fourteen (14) PLCs.[3] Two (2) of those referrals was for end-users in the UAE, however neither could have counted towards the metric total required in the PIP. One of your UAE PLC referrals was untimely because you submitted it 11 business days (15 calendar days) after receiving the license application. Additionally, you did not provide the required justification outlining the enforcement concerns for completing this check.

The second UAE PLC you referred was convoluted and could not be processed as a PLC because the license application had already been processed and approved in August 2007. Nevertheless, you referred the matter for PLC and attached a justification memo. The justification memo was insufficient because it too failed to outline the enforcement concerns for completing the check.

You submitted twelve (12) other PLC requests for my review during the PIP. Only one (1) was a timely PLC referral which was for Brazil. This PLC was counted towards your metric total.

The remaining eleven (11) referrals could not be counted because they were submitted: untimely (four (4) days or more after receipt); without proper supporting information as required by the PIP (including no enforcement concern identified); and/or without

---

[3] This total number of PLCs reflects every PLC submission you made, including duplicates and submissions for end-user outside your assigned countries. Specifically, for end-user Tuan Anh Tran (Vietnam), you submitted two requests for this single end-user. Similarly, for end-user Prot-Cap Artigos (Brazil) you submitted five requests for this single end-user. Also, you referred PLCs for Taiwan and Russia, which were not countries assigned to you during the PIP. Ordinarily, multiple PLC submissions for a single end-user are counted as only one request. However, to afford you every opportunity to improve, I have counted your multiple submissions individually, including the one license application which was already approved. Had I not counted each of your submissions individually or the submissions outside your assigned countries, your total number of referred PLCs for the PIP period would have been six (6). Regardless of whether the PLC total is 13 or 6, you did not meet the standards in either quantity or quality for PLCs referrals as required by the PIP.

additional information you were requested to provide.  As a result of the above, you referred only one (1) timely, quality PLC consistent with the PIP instructions.

The PIP warned that your performance would be unacceptable if, more than twice, you: a) referred untimely PLCs; b) referred PLCs without showing your research and analysis; or c) you did not meet your metrics (2 PLCs for end-users in the UAE and 1 PLC for an end-user in one of your other assigned countries).  Here, you referred thirteen (13) untimely PLCs and all of your PLC referrals failed to include information required to reflect your research and analysis. Therefore, your performance of this duty under Critical Element 2 is unacceptable.

**Reason 2:    Unacceptable Performance of Critical Element 3:  Post-Shipment Verifications and Review of Shipper Export Declarations**

BIS has approved over 400 license applications to the UAE over the past two years.  During this same time period, U.S. Census data shows that over 300 shipments were exported with a license. In addition to licensed export transactions, U.S. Census Bureau Foreign Trade Statistics show that U.S. exports to the UAE have increased over 200% since 2002.  Notably, the U.S. averages approximately 12,700 export shipments a month to the UAE.   Consequently, there are more than sufficient shipments to the UAE which are potential targets for PSV and "no license required" (NLR) checks, especially in areas for civilian aircraft and computer items.

> Specification:  Under the PIP, you were required to initiate at least five (5) PSVs.  The PIP warned that only PSVs you identified through independent research and analysis would count towards this total.  Of the five (5) PSVs:  two (2) had to have been NLR checks and three (3) had to have been licensed checks.  At least three (3) had to have been for end-users located in the UAE.

> During the PIP, you submitted a total of six  (6) PSVs request.  Of these 6, none were NLR.

> You submitted three (2) PSVs for the UAE, but only one (1) was initiated.  The remaining, UAE PSV was not initiated because it was not the result of your independent research and analysis.  Rather, the PSV was marked "condition 14", which indicates that the PSV was requested from another government agency or another analyst within the team.  In this case, the "condition 14" reflected that another OEA Analyst requested the PSV.

> In addition to the two UAE PSVs you submitted, you also submitted four (4) non-UAE PSVs.  Three (3) of those non-UAE PSVs also had a license condition 14 indicating they were not the result of your independent research and analysis as instructed in the PIP. Therefore, as warned, they could not be counted toward your metric totals.

> The final remaining non-UAE PSV could not be initiated and counted because you failed to provide the required additional follow-up information requested.

The PIP warned that only PSVs you identified through independent research and analysis would count towards your metric total of 5 initiated PSVs (2 no license required (NLR) checks and 3 licensed checks). At least 3 of your PSVs had to have been for end-users located in the UAE. None of the PSV requests you submitted during the PIP were NLR. Of the 6 PSV requests that you submitted, 4 could not be counted because they were not the result of your independent research and analysis. One of the remaining 2 PSVs could not be initiated because you failed to provide requested information reflecting research and analysis. Thus, in all, you initiated only 1 out of the required 5 PSVs since the PIP began. Consequently, your performance under Critical Element 3 is unacceptable.

**Reason 3:    Unacceptable Performance of Critical Element 4:  Research and Analysis of Assigned Export Enforcement Projects**

Specification:  Under the PIP, you were required to refer sufficient, quality PLCs and PSVs which you were to select through thoughtful, independent research and analysis. Each of your referrals were to be presented to me with a brief, informal 1-2 paragraph justification "memorandum" explaining the reasons for the referral. I provided you a sample justification memo in e-mail format as guidance. The PIP warned that you were to submit your memos to me before initiating a PLC or PSV. Your memos were to contain few or no spelling or grammatical errors and had to be comprehensive and organized. The PIP warned that failure to follow this standard two (2) or more times during the PIP period would result in unacceptable performance.

During the PIP, you submitted twenty (20) end-use check requests for review (13 PLCs and 7 PSVs). Of the twenty checks, you submitted nineteen (19) justification memos. Thus, you failed to submit one (1) memo.

Of the 19 memos you submitted, twelve (12) [4] were submitted directly into the ECASS database, even though you never requested permission to submit in that manner. Indeed, your ECASS submissions depart significantly from the sample justification provided to you with the PIP.

In addition to your 12 ECASS submissions, you provided seven (7) e-mail justification memos. Regardless of how you submitted your justifications, none of your nineteen (19) submissions contained the information that was required by the PIP and included in the sample memo you received. Most significant perhaps is that none of your nineteen (19) memos showed complete, thoughtful, and quality research and analysis. Indeed, none of the 19 memos identified even the enforcement concerns at issue or even explain the reasons for referring the end-use checks.

---

[4] As described in footnote 3, to afford you every opportunity to improve, each PLC referral you made was counted toward this total, including multiple referrals for the same end-user and referrals for end-users outside your assigned countries. The 12 PLC referrals you made into ECASS each was accompanied by a "justification" statement. Each "justification" was also counted under this Critical Element, even if it was merely a statement cut and pasted multiple times for the same end-user.

The PIP warned that if you failed more than two times during the PIP period to refer sufficient, quality end-use checks that were selected through thoughtful, independent research and analysis and justified with proper memos, your performance would be unacceptable. Indeed, performing independent research and analysis is the heart of your Export Compliance Specialist position. Nevertheless, you failed to submit justification memos reflecting this research and analysis 19 times during the PIP period. One memo you never even submitted, and of those 19 you did submit, none comported with the PIP's requirements. Thus, in total you failed to satisfy this PIP standard 20 times. Accordingly, your performance under Critical Element 4 is unacceptable.

In all, throughout the PIP period, I provided you detailed guidance and feedback. However, you did not apply my comments, suggestions or instructions nor did you provide me additional information when requested.

The PIP expressly informed you that your unacceptable performance of the identified duties was of such significance and so fundamental to your Export Compliance Specialist job, that if you remained unacceptable in even one (1) of those duties, you would fail the entire Critical Element and the PIP. Given all of the above, it is clear that you did not raise your performance to an unacceptable level in even one of those duties. Thus, your performance remains unacceptable in Critical Elements 2, 3 and 4. As a result, I am proposing that you be removed from your Export Compliance Specialist position for unacceptable performance.

**Determination of Penalty**

In determining the appropriate penalty to propose, I considered the critical nature of your duties which involve reviewing exports of national security and proliferation concern. I have determined that your inability to complete effective independent research and analysis and to select proper end-use checks has serious consequences that could impact national security.

Indeed, one of the UAE license applications BIS received during the PIP period which you failed to log, review, and refer for an end-use check (either PLC or PSV), was identified as an Iranian owned company and of serious concern by the Export Control Officer (ECO) assigned to the UAE. A colleague of yours actually referred the application for a PLC after you failed to refer it for either a PLC or PSV. As a result of this PLC, the Agency learned that the UAE consignee is an unreliable recipient of U.S. origin commodities and has possibly provided aluminum tubes to support Iran's nuclear program. The consignee has been determined an invalid recipient who may have attempted to divert/re-export items to Iran in violation of American export laws. As this example shows, there is a real and intolerable risk to you not performing your fundamental Export Compliance Specialist duties at an acceptable level.

I have also considered that your performance problems have been long standing. Although Mr. Andrukonis implemented a PIP for you before I became your supervisor, I took no action at the end of that PIP and instead reached my own conclusions about your performance. Based on my assessments, your performance by the close of FY 2007 was unsatisfactory. Therefore, I implemented a PIP to reflect my expectations of at least marginal performance from an Export Compliance Specialist. Despite having provided you samples, Feedback, instruction and

7

guidance, your performance remained unacceptable. Therefore, I do not believe that you are able to adequately perform your Export Compliance Specialist job.

In making this proposal, I also considered your nearly twenty-five years of Federal service. However, the longevity of your employment does not outweigh the fact that your performance remains unacceptable despite your having received ample opportunity to improve.

This notice is a proposed action only, and any reply you submit to the deciding official in this matter will be given full consideration in arriving at a final decision.

## **Rights**

To Reply:  You may reply to this notice of proposed removal in writing, orally, or both. Your Reply must be made to the deciding official, Mr. Glenn Krizay, Director, Office of Enforcement Analysis, Room 4065, 1401 Constitution Avenue, N.W., Washington, D.C. 20230. Should you wish to make an oral Reply, you must arrange an appointment with Mr. Krizay, by calling him at (202) 482-4550 within seven (7) calendar days of your receipt of this notice. Your written Reply must be made within 15 calendar days of your receipt of this notice. If you choose to do so, you may furnish affidavits or other documentary evidence in support of your reply. Mr. Krizay will fully consider any Reply you submit.

If you need an extension of the time limit for your Reply, you must submit to Mr. Krizay a written request within 7 calendar days with specific reasons why you need the extension. Mr. Krizay will advise you as to whether an extension will be granted.

Representation:  You may designate a representative in this matter. If you designate a representative, you must do so in writing by notifying Roberto Lopez, Senior Employee and Labor Relations Specialist, Office of Human Resources Management, ITA, Room 7060. Your designation must include the name, title (if any), and address of the representative you have designated. You may contact Mr. Lopez telephonically at (202) 482-8086 or via email at Roberto_Lopez@ita.doc.gov.

Materials Relied Upon:  You and/or your representative may review the materials relied upon to propose this action. You may arrange to do so by contacting Mr. Lopez telephonically at (202) 482-8086 or via email at Roberto_Lopez@ita.doc.gov.

If you are in a duty status, you may use a reasonable amount of time to review the supporting material, secure affidavits or other evidence, and to answer this notice. You may arrange to do so by contacting Mr. Krizay in advance.

You will receive a written decision from Mr. Krizay concerning this proposed action as soon as possible after your Reply is received or after the expiration of the 15-day limit if you do not Reply. The written decision will be based on the record in this case, as well as any written and/or oral Reply you make.

8

If you feel you would benefit by speaking to a counselor, the Employee Assistance Program (EAP) is a voluntary and confidential service provided to you for your use. Should you wish to make use of EAP, you may call (202) 482-1569.

If you have any questions regarding your procedural rights in this matter, would like to review the information relied upon for this Notice, or have questions regarding your rights and responsibilities, you should contact Mr. Lopez.

Please sign and date the receipt acknowledgment copy of this memorandum. Your signature merely indicates that you have received a copy of this memorandum; it does not indicate that you agree or disagree with its contents. However, your refusal to sign the receipt acknowledgment copy does not void its contents.

RECEIPT ACKNOWLEDGED:

_Employee Refused to Sign_                    _Feb 27, 2008_
Janet Howard                                    Date of Receipt
_Todd Qwells; Assistant Director, OEA_

_____                    _2-27-08_
Witness by                                      Date of Receipt


Cc: Glen Krizay, Director OEA
    Roberto Lopez, ITA HR

9