UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JANET HOWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-0421 (PLF) |
| | ) | |
| CARLOS GUTIERREZ, Secretary, | ) | |
| U.S. Department of Commerce, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Defendant, Carlos Gutierrez ("Defendant"), Secretary, U.S. Department of Commerce ("Agency") by his undersigned attorneys, hereby submits the following memorandum of points and authorities in opposition to Plaintiff Janet Howard's Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Motion").[1]  Plaintiff's Motion requests that the Court enjoin the Agency from taking any action on a pending proposal to terminate her employment.  For the reasons detailed below, Plaintiff's Motion should be denied.

## PRELIMINARY STATEMENT

Plaintiff seeks a preliminary injunction seeking to compel the Agency "to cease and desist actions to remove plaintiff from employment; and to immediately cease and desist all

---

[1]      Plaintiff also purports to bring this action against certain individuals in their official capacities. *See* Compl. at 2.  Defendants, however, have read Plaintiff's Motion to seek injunctive relief only against Defendant Gutierrez and the Agency.  If the Court believes that the Motion seeks relief against other defendants, Plaintiff's Motion should be denied as to such other defendants for the same reasons stated herein.  Moreover, such other individuals are not proper defendants in this Title VII action. *See Howard v. Evans*, 193 F. Supp. 2d 221, 223, n.1 (D.D.C. 2002) (denying Plaintiff Janet Howard's application for a preliminary injunction, noting that the head of an agency is the only proper defendant in a Title VII action).

discriminatory and retaliatory employment actions being taken against [Plaintiff]." *See* Motion at 1. In essence, Plaintiff seeks an injunction compelling the Agency to cease its regular administrative processing of a notice of proposed removal ("Proposed Removal"). For a number of reasons, Plaintiff's Motion for a preliminary injunction[2] is utterly without merit.

*First*, Plaintiff has not shown a likelihood of success on the merits of her claims. Indeed, Plaintiff's claims are ripe for a threshold dispositive motion because Plaintiff has not exhausted her administrative remedies. Plaintiff has once before tried to bring an action with a motion for a preliminary injunction before she exhausted her administrative remedies. That action was dismissed and her motion was denied. This action and the present Motion should face similar fates.

*Second*, Plaintiff has not shown any irreparable harm that she will suffer in the absence of preliminary injunction. As an initial matter, because the Agency has yet to make any decision on her Proposed Removal, any future injury is speculative. Moreover, even if her Motion were not premature, at most Plaintiff faces removal from her position at the agency, which, in the event she is ultimately successful on her claims, can be remedied by back pay, restoration of her position and/or other money damages if appropriate. Accordingly, Plaintiff has failed to show irreparable harm.

---

[2]    Plaintiff also purports to seek a temporary restraining order. However, because the Court will be able to address the fully briefed merits of the Motion before Defendant takes any action on the Proposed Removal, consideration of Plaintiff's request for a temporary restraining order is moot. Indeed, in order for this Court to fully consider the Motion and this Opposition, the Agency has agreed not to effectuate a decision on the Proposed Removal until after April 18, 2008. Nevertheless, if the Court deems it necessary to consider the merits of Plaintiff's request for a temporary restraining order, such a request should fail for the same reasons that a preliminary injunction is inappropriate in this action.

*Lastly*, forcing Defendant to retain an allegedly underperforming employee in a critical position with national security implications is not in the public's interest, and in fact, harms the public.    As noted below, Plaintiff's Proposed Removal is a result of her unacceptable performance of her job, which primarily concerns reviewing export license applications and recommending and processing end-use verifications on exported goods.    Forcing Defendant to retain an underperforming employee, who could be compensated by money damages if ultimately successful on her claims, is not in the public's interest.

For these reasons, which are explained in more detail below, Plaintiff's Motion should be denied.

## BACKGROUND

### I.    PLAINTIFF'S POSITION AT THE AGENCY.

The U.S. Department of Commerce is an Executive Branch agency and consists of various bureaus, one of which is the Bureau of Industry and Security ("BIS").    BIS's mission is to advance U.S. national security, foreign policy and economic interests.    *See* http://www.bis.doc.gov.    The Office of Enforcement Analysis ("OEA") is a unit within BIS. OEA's mission is to carry out the Agency's export enforcement responsibilities as mandated by the Export Administration Act of 1979 and its implementing regulations.

Plaintiff is an Export Compliance Specialist assigned to OEA.    She has been employed by the Defendant since approximately 1983.    As an Export Compliance Specialist, Plaintiff's primary responsibilities, among others, include reviewing export license applications and, where appropriate, recommending end-use checks.    *See* Declaration of Todd Willis ("Willis Decl.") at ¶ 5, attached hereto at Exhibit A ("Attached Ex. A.").    Moreover, because Plaintiff is responsible

for helping ensure that exports are not sent to, and ultimately do not fall into the hands of, individuals seeking to harm the interests of the United States or its citizens, Plaintiff's position implicates national security concerns. *Id.* at ¶ 5.

Plaintiff's first-level supervisor is Todd Willis, GS-1801-15, Assistant Director, OEA. *Id.* at ¶ 3. Plaintiff's second-level supervisor is Glenn Krizay, Senior Executive Service, Director, OEA. *Id.*

## II.    MR. WILLIS BECOMES PLAINTIFF'S SUPERVISOR WHEN PLAINTIFF WAS ALREADY ON THE APRIL 2007 PIP.

Mr. Willis became Plaintiff's first-level supervisor on July 23, 2007. *Id.* at ¶ 6. At that time, Plaintiff was working under a performance improvement plan ("PIP") implemented on April 27, 2007, by her former first-level supervisor (the "April 2007 PIP"). *Id.* The April 2007 PIP was scheduled to end July 27, 2007. Plaintiff was specifically informed in the April 2007 PIP, that if her performance did not improve by the end of the PIP period, she could be subject to a performance-based action such as demotion or removal. *Id.*

Because Mr. Willis became Plaintiff's first-level supervisor with only five days remaining on the April 2007 PIP, he was uncomfortable judging whether Plaintiff fulfilled the requirements of the April 2007 PIP. *Id.* at ¶ 7. Indeed, Mr. Willis wished to observe Plaintiff's performance himself before deciding whether any measures concerning Plaintiff's employment were required. *Id.* Consequently, Mr. Willis deferred considering any such measures until the fiscal year ended on September 30, 2008 ("FY 2007"). *Id.*

### III. MR. WILLIS OBSERVES PLAINTIFF'S PERFORMANCE FIRST HAND, CONCLUDES IT IS UNACCEPTABLE, AND PLACES HER ON THE NOVEMBER 2007 PIP.

During this period -- from July 23, 2007 to September 30, 2008 -- Mr. Willis had numerous opportunities to evaluate, first-hand, Plaintiff's professional performance in her position at BIS.  *Id.* Based upon these opportunities, Mr. Willis concluded that Plaintiff's performance had improved in some areas, but overall remained unacceptable.  *Id.* at ¶ 8. Accordingly, Plaintiff received an "unacceptable" rating for FY 2007.  *Id.*  As a result of this rating, the Agency placed Plaintiff on a new 60-day PIP -- which began on November 13, 2007 and was scheduled to end on January 11, 2008 ("November 2007 PIP") -- to allow Plaintiff another opportunity to improve her performance.  *Id.*  As part of the November 2007 PIP, Plaintiff again was informed that she could be demoted or removed if she failed to improve her performance. *Id.*

Plaintiff's performance did not improve under the November 2007 PIP, and on February 27, 2008, Mr. Willis proposed Plaintiff's removal from the Agency (*i.e.*, the Proposed Removal). *See* Willis Decl. at ¶ 10, Attached Ex. A.  Plaintiff currently has until today, March 27, 2008, to respond to the Proposed Removal.  After Plaintiff has responded to the Proposed Removal (or her time for a response has lapsed without a response), a deciding official -- Mr. Krizay, Plaintiff's second-line supervisor -- will consider the Proposed Removal and any opposition, and make an independent determination on what measures, if any, will be taken concerning Plaintiff's employment with the Agency.  *See id.* at ¶ 11.

IV.    **PLAINTIFF HAS ONLY JUST BEGUN THE AGENCY'S EEO PROCESS AS TO THE NOVEMBER 2007 PIP AND PROPOSED REMOVAL, AND NO ACTION HAS BEEN TAKEN ON THE PROPOSED REMOVAL.**

On February 5, 2008, Plaintiff filed a formal EEO complaint ("Administrative Complaint") with Defendant's Office of Civil Rights, which alleged that Plaintiff was subject to discrimination, retaliation and harassment stemming from the November 2007 PIP.  *See* Thomas Decl. at ¶¶ 7a - 7c, Attached Ex. B.  On March 6, 2008, Plaintiff amended her February 5, 2008, formal EEO complaint to include the Proposed Removal.  *See id.* at ¶ 8.  At present, Plaintiff's Administrative Complaint is in the initial stages of the administrative process, and no report of investigation has yet been issued.  *See id.* at ¶ 9.

V.    **PLAINTIFF PREMATURELY INITIATES THIS ACTION.**

On March 12, 2008, Plaintiff filed the Complaint in this action alleging that she was subject to discrimination and retaliation when the Agency rated her as unsuccessful in November 2007, put her on the November 2007 PIP, and issued its Proposed Removal.  *See* Compl.

\*    \*    \*

To date, no decision or action has been taken on the Proposed Removal and Plaintiff remains employed as an Export Compliance Specialist.

## <u>ARGUMENT</u>

I.    **THE STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF IS STRINGENT.**

The standard for obtaining a preliminary injunction is a difficult one to fulfill.  To obtain injunctive relief, Plaintiff must show (a) a substantial likelihood of success on the merits; (b) that she would suffer irreparable harm absent an injunction; (c) that issuing an injunction would not significantly harm the Defendant or other parties; and (d) that the public interest will be furthered

by the injunction. *See Howard v. Evans*, 193 F. Supp. 2d 221, 226-27 (D.D.C. 2002) (denying Plaintiff Janet Howard's attempt to obtain a preliminary injunction), *citing Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998). Moreover, preliminary injunctions are extraordinary forms of judicial relief, and courts should only grant them sparingly. *Howard v. Evans*, 193 F. Supp. 2d at 227, *citing Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976).

In applying the aforementioned four-part test, a court may balance the strengths of each factor. *Id.* However, it is critical that Plaintiff show a substantial likelihood of success on the merits. *Howard v. Evans*, 193 F. Supp. 2d at 227 ("It is particularly important for the movant to demonstrate a substantial likelihood of success on the merits. Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review.") (internal citations omitted), *quoting Am. Bankers Ass'n v. Nat'l Credit Union Admin.,* 38 F.Supp.2d 114, 140 (D.D.C. 1999) (internal quotations omitted). Moreover, if Plaintiff fails to show irreparable injury, the Court may dispense with the Motion without further consideration of any other factor. *Howard v. Evans*, 193 F. Supp. 2d at 227 ("if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors"). As demonstrated below, Plaintiff cannot prove substantial likelihood of success, irreparable harm, or that public interests will be furthered. Thus, her request for injunctive relief must be denied.

## II.    PLAINTIFF CANNOT SHOW A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF HER CLAIMS BECAUSE SHE FAILED TO EXHAUST ADMINISTRATIVE REMEDIES.

Plaintiff has not exhausted her administrative remedies regarding the claims alleged in her Complaint. Accordingly, Plaintiff's Complaint is ripe for a threshold dispositive motion, and

Plaintiff cannot show any, let alone a substantial, likelihood of success on the merits of her claims for purposes of this Motion.

Under Title VII, an employee of the federal government, such as Plaintiff, may raise claims of employment discrimination, retaliation and harassment in federal court only after she has exhausted certain administrative remedies. 42 U.S.C. § 2000e *et. seq*; 29 C.F.R. § 1614.407. In order to initiate the administrative process, an employee must contact an EEO counselor within 45 days of the alleged discriminatory act; and after a final interview with the counselor, may file a formal administrative complaint within 15 days after receiving a right to file notice. 29 C.F.R. §§ 1614.105-106. Once a formal administrative complaint has been filed, the agency has 180 days from the date of the last amendment to the formal complaint to investigate the issues raised in the complaint. *See* 42 §2000e-16(c); 29 C.F.R. § 1614.407(b). Only after 180 days have lapsed, or after the agency issues a final decision (whichever is earlier), may the employee pursue his or her claims in federal court. *Id.* A complaint brought in federal court before such time is subject to dismissal. *Id.*

As Plaintiff is well aware from *Howard v. Evans*, 193 F. Supp. 2d at 228, a court will deny a motion for a preliminary injunction and dismiss an action when Plaintiff's claims have not been properly exhausted. *Id.* Indeed, in *Howard v. Evans* -- which concerned essentially the same allegations now being litigated in *Howard v. Gutierrez*, Civ. A. No. 04-0756 (PLF) -- Judge Urbina rejected an attempt almost identical to the current Motion, by denying Plaintiff's motion for a preliminary injunction and dismissing her complaint when Plaintiff failed to exhaust her administrative remedies:

> Applying these principles to the case at bar demonstrates that the plaintiff's failure to exhaust administrative remedies before filing

the present action against the defendant bars her claim for injunctive relief. *See* 42 U.S.C. § 2000e-16(c). Further, the defendant argues that, in connection with the requirements imposed by 42 U.S.C. § 2000e-16(b), the plaintiff had barely begun to meet with an EEO counselor before initiating the present litigation regarding the relocation of her work station, and that the defendant was not given ample time to investigate, mediate, and alleviate the situation. *See* Def.'s Mot. for Summ. J. at 16. Accordingly, because the plaintiff's complaint admits, in no uncertain terms, that she did not seek administrative remedies before initiating the current lawsuit, this court must dismiss the plaintiff's complaint since it lacks subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *See* FED. R. CIV. P. 12(b)(1); 42 U.S.C. § 2000e-16(c); *Brown v. General Servs. Admin.,* 425 U.S. at 832, 96 S.Ct. 1961; *Marshall,* 130 F.3d at 1098; *Park,* 71 F.3d at 907-09; *American Bankers Ass'n.,* 38 F.Supp.2d at 140 (internal quotation omitted).

The court's analysis of the plaintiff's preliminary injunction motion stops here because the court need not determine the viability of the plaintiff's arguments respecting the remaining three prongs of the preliminary injunction standard in light of the rule that a preliminary injunction may only issue when the movant demonstrates a showing that supports *all* four of the preliminary injunction factors previously named. *See Mova Pharmaceutical Corp.,* 140 F.3d at 1066; *CityFed Fin. Corp.,* 58 F.3d at 746; *World Duty Free Americas, Inc.,* 94 F.Supp.2d at 64.

*Howard v. Evans*, 193 F. Supp. 2d at 228. To be true, "[t]he [exhaustion] requirement is 'not a mere technicality;' rather, the D.C. Circuit has clearly admonished that a district court should not 'allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process.'" *Id., quoting Park v. Howard Univ.*, 71 F.3d 904, 907-09 (D.C. Cir. 1995).

Applying this standard to Plaintiff's claims, it is clear that Plaintiff's Complaint is ripe for dismissal, and thus, Plaintiff cannot show a substantial likelihood of success on the merits. On March 6, 2008, Plaintiff amended her then existing Administrative Complaint concerning the

November 2007 PIP, by adding a claim premised upon the Proposed Removal. *See, supra*, at 6.

Accordingly, Plaintiff cannot bring an action premised upon such acts until September 4, 2008

(*i.e.*, the first weekday following 180 days after such amendment), unless the agency issues a

final decision before that date, which has not yet occurred. Therefore, Plaintiff's claims are ripe

for dismissal, and thus, Plaintiff cannot show a substantial likelihood of success on the merits.[3]

## III.    PLAINTIFF CANNOT SHOW IRREPARABLE INJURY.

Plaintiff also cannot show irreparable injury. Where government personnel matters are at

issue, courts reserve injunctive relief for extraordinary circumstances. *Sampson v. Murray*, 415

U.S. 61 (1974); *Wagner v. Taylor*, 836 F.2d 566, 757 n.66 (D.C. Cir. 1987). This higher

standard for government personnel matters acknowledges both the wide latitude afforded the

government in conducting its internal affairs and the historical unwillingness to grant equitable

relief in employment cases. *See Sampson*, 415 U.S. at 83.

Although *Sampson* established a heightened standard for injunctive relief, the Court did

not explicitly define what "extraordinary circumstances" required. Instead, the Court explained

that the employee seeking injunction needs to, "at the very least . . . make a showing of

irreparable injury sufficient in kind and degree to override the[] factors cutting against the

---

[3]       The D.C. Circuit has held that a court has jurisdiction to issue interim injunctive relief even though an employee is still pursuing his or her administrative remedies to maintain the status quo of the parties in the litigation and to stave off threats of reprisal for engaging in administrative review of the challenged employment practices. *See Wagner v. Taylor*, 836 F.2d 566, 571 (D.C. Cir. 1987) (affirming denial of motion for preliminary injunction). Here, however, Defendant does not challenge the Court's jurisdiction to issue interim injunctive relief, but rather argues that an injunction is inappropriate given the deficiencies in Plaintiff's claims. Moreover, Plaintiff seeks not to maintain the status quo but to compel the agency to halt its regular administrative process concerning Plaintiff's Proposed Removal. Further, Plaintiff has not alleged that she has been retaliated against for pursuing the administrative EEO process on her November 2007 PIP and Proposed Removal. Indeed, consideration of the Proposed Removal is the automatic next step in the administrative performance evaluation process. Additionally, for the reasons stated below, Plaintiff cannot establish an irreparable harm sufficient to disturb the agency's regular administrative process.

general availability of injunctions in Government personnel cases." *Id.* at 84. Notably, insufficient savings or difficulty finding reemployment "will not support a finding of irreparable injury, however severely they may affect a particular individual" as those injuries are "common to most discharged employees and [are] not attributable to any unusual actions relating to the discharge itself." *Id.* at 92 n. 68.

This District Court has applied *Sampson*'s higher standard for injunctive relief in Title VII cases brought by federal employees. *See e.g.*, *Farris v. Rice*, 453 F. Supp. 2d 76, 79-80 (D.D.C. 2006) (Urbina, J.). In such cases, the courts have recognized that a plaintiff seeking injunctive relief in a Title VII action against the federal government must make "a more stringent showing of irreparable injury". *Bonds v. Heyman*, 950 F. Supp. 1202, 112 (D.D.C. 1997), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).

Here, Plaintiff cannot satisfy either the stringent *Sampson* standard or even the lesser, traditional standard of irreparable injury. The D.C. Circuit has defined the traditional standard of irreparable injury as "both certain and great . . . actual and not theoretical." *See Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). To prevail, the party requesting relief must show that "the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.*, *quoting Ashland Oil, Inc. v. FTC*, 409 F. Supp. 297, 307 (D.D.C. 1976) (citations and internal quotations omitted). Finally, mere "allegations of what is likely to occur are of no value since the court must decide whether the harm will *in fact* occur". *Id.* (emphasis in original).

- 11 -

Even if the injuries Plaintiff alleges in her Motion were supported by some evidence (which they are not), they do not constitute irreparable harm. *See* Motion at 3. Plaintiff alleges that she might suffer lost revenue; loss of medical and life insurance benefits; reduced retirement benefits; loss of home, car, and enjoyment of life; mental and physical distress; embarrassment; and damage to reputation. *Id.* These claimed harms are not certain, great, imminent or supported by any independent evidence.

*First,* the cited harms are wholly speculative because, as of the filing of this Opposition, no decision has even been reached on her Proposed Removal.

*Second*, the identified harms are based solely on Plaintiff's mere allegations. *Id.* Such unsupported allegations of lost employment, salary and benefits "cannot possibly provide a sufficient basis for injunctive relief". *Nichols v. Agency for Int'l Dev.*, 18 F. Supp 2d 1, 4-5 (D.D.C. 1998) (Kollar-Kotelly, J.) (denying motion for preliminary injunction where plaintiff alleged he was improperly terminated, finding that plaintiff failed to establish irreparable harm where plaintiff merely alleged irreparable harm without support or explanation: "If the bare allegations of irreparable injury that Mr. Nichols has marshaled could justify interim injunctive relief, the federal government would be paralyzed from taking necessary personnel action every time an employee believed that his or her termination or involuntary separation was animated by discriminatory or retaliatory animus.") (citations omitted).

*Third*, the injuries which Plaintiff cites are temporary, economic damages which are recoverable during the ordinary course of Title VII litigation.[3] *Sampson*, 415 U.S. at 90 ("mere

---

[3]    In weighing "irreparable harm," the *Sampson* Court cited the legislative history of the Back Pay Act and concluded that the availability of back-pay to terminated government employees weighed against the existence of irreparable harm: "an agency or department of the Government may remove any employee at any time, but [] the

injuries, however substantial in terms of money . . .are not enough" to show irreparable harm).

As such, it is well established that these types of economic injuries do not constitute irreparable

harm. *Id*. ("temporary loss of income, ultimately to be recovered, does not usually constitute

irreparable injury") (citation omitted). Indeed, "[t]he key word in this consideration is

irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily

expended in the absence of a stay, are not enough. The possibility that adequate compensatory or

other corrective relief will be available at a later date, in the ordinary course of litigation, weighs

heavily against a claim of irreparable harm." *Nichols*, 18 F. Supp 2d at 4.

Given the above, Plaintiff cannot show that without the requested injunctive relief, she

would suffer irreparable harm.  Therefore, Plaintiff's request for such injunctive relief should be

denied.

## IV.    GRANTING PLAINTIFF INJUNCTIVE RELIEF WOULD HARM DEFENDANT AND SERVE NO PUBLIC INTEREST.

In *Sampson*, the Court stressed the importance of granting the government "the widest

possible latitude in the dispatch of its own affairs." *Sampson*, 415 U.S. at 83.  If Plaintiff's

request for injunctive relief were granted, the Defendant's ability to make the most fundamental

personnel decisions in dispatching its affairs would cease.  Moreover, if Plaintiff were successful

on this Motion, Defendant would be compelled to retain Plaintiff, who has underperformed, in a

position with national security implications.  Not only would this result not serve a public

---

employee shall then have a right of appeal.  When he is removed, he is of course off the pay roll.  If he wins the appeal, it is provided that he shall be paid for the time during which he was suspended." *Sampson*, 415 U.S. at 90 (citation omitted).  Although *Sampson*'s citation was to the Back Pay Act, Title VII allows not only a back-pay remedy, but also compensatory damages and attorney fees should the Title VII plaintiff prevail.

interest, it could potentially harm the public.  For all of these reasons, Plaintiff should not be awarded injunctive relief.

## **CONCLUSION**

Based on the foregoing, the Court should deny Plaintiff's request for a preliminary injunction.  A proposed order is attached.

Dated: March 27, 2008
          Washington, DC

                                        Respectfully submitted,

                                        _____
                                        JEFFREY A. TAYLOR, D.C. BAR #498610
                                        United States Attorney

OF COUNSEL:
LISA K. SCHNEIDERMAN, ESQ.                    /s/
Office of the General Counsel           _____
Employment & Labor Law Division         RUDOLPH CONTRERAS, D.C. BAR #434122
U.S. Department of Commerce             Assistant United States Attorney


                                              /s/
                                        _____
                                        BRIAN P. HUDAK
                                        Assistant United States Attorney
                                        555 4th Street, NW
                                        Washington, DC 20530
                                        (202) 514-7143

                                        *Attorneys for Defendant*

- 14 -

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 27th day of March, 2008, a true and correct copy of above

Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Emergency

Motion for Temporary Restraining Order and Preliminary Injunction, was served upon *pro se*

Plaintiff, by first class United States mail, postage prepaid, to:

Janet Howard
P.O. Box 1454
Spotsylvania, VA 22553

Dated: March 27, 2008
      Washington, D.C.

Respectfully submitted,

    /s/
BRIAN P. HUDAK
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7143
brian.hudak@usdoj.gov

# EXHIBIT
# A

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JANET HOWARD,             )
                                  )
     Plaintiff,            )
              v.              )     Civil Action No. 08-421 (PLF)
                                    )
CARLOS GUTIERREZ, Secretary,  )
  U.S. Department of Commerce,   )
                                    )
     Defendant.          )
_____)

## DECLARATION OF TODD WILLIS

     I, Todd Willis, pursuant to 28 U.S.C. §1746, declare under penalty of perjury that the

following are true and based on my personal knowledge:

     1.      I am over the age of 18 and am fully competent to make this declaration.

     2.      I am the Assistant Director of the Office of Enforcement Analysis, which is

contained in the Bureau of Industry and Security (BIS), within the United States Department of

Commerce ("DOC," "Department," "Agency").

     3.      I am Janet Howard's first-level supervisor.  Glenn Krizay, Director, Office of

Enforcement Analysis is my first-level supervisor and Ms. Howard's second-level supervisor.

     4.      As the Assistant Director of the Office of Enforcement Analysis (OEA), my duties

include supporting OEA's mission of carrying out the Agency's export enforcement

responsibilities as mandated by the Export Administration Act of 1979 (the Act) and its

implementing regulations.

     5.      As Ms. Howard's first-level supervisor, I am familiar with her job duties, which

include reviewing export license applications and, where appropriate, recommending end-use

checks. Because Plaintiff is responsible for helping ensure that exports are not sent to, and ultimately do not fall into the hands of, individuals seeking to harm the interests of the United States or its citizens, Plaintiff's position implicates national security concerns. I am also familiar with Ms. Howard's performance of those duties.

6.    I became Ms. Howard's first-level supervisor on July 23, 2007. At that time, she was working under a performance improvement plan (PIP) implemented April 27, 2007 by her former first-level supervisor. This PIP was scheduled to end July 27, 2007, and it warned Ms. Howard that if her performance did not improve, she could be subject to a performance-based action such as demotion or removal.

7.    Because I had become Ms. Howard's first-level supervisor with only five days remaining on the PIP, I was uncomfortable judging Ms. Howard's performance under the existing PIP because I had not observed her work first-hand. Accordingly, I deferred any decisions until the Fiscal Year ended on September 30, 2008. From the time I because Ms. Howard's supervisor under September 30, 2008, I had numerous opportunities to observe Ms. Howard's work, and believed by that date I had had sufficient opportunity to first-hand evaluate her performance.

8.    By the conclusion of Fiscal Year (FY) 2007, I noted that Plaintiff's performance had improved in some areas, but overall it remained unacceptable. Therefore, I rated her FY 2007 performance unacceptable. Also, I implemented a new 60-day PIP period to allow her another opportunity to raise her performance. The new PIP again warned Ms. Howard that failure to raise her performance could result in her demotion or removal.

9.    The new PIP began on November 13, 2007 and ended on January 11, 2008.

10.     Ms. Howard's performance did not improve under that PIP, so by letter dated February 27, 2008, I proposed her removal.

11.     Based upon my understanding, Ms. Howard has been given an opportunity to respond to my proposal. It is my understanding that Mr. Krizay, Ms. Howard's second-line supervisor, will consider the facts before him, and make a final determination as to my proposal.


Further declarant sayeth not.

_____                    *Mar 27, 2008*
Todd Willis                                                 Date
Assistant Director, Office of Enforcement Analysis
Bureau of Industry and Security
United States Department of Commerce

# EXHIBIT
# B

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANET HOWARD,                    ) | |
|                                  ) | |
|      Plaintiff,                  ) | |
|             v.                   ) | Civil Action No. 08-421 (PLF) |
|                                  ) | |
| CARLOS GUTIERREZ, Secretary,     ) | |
| U.S. Department of Commerce,     ) | |
|                                  ) | |
|      Defendant.                  ) | |
|                                  ) | |

## DECLARATION OF SUSAN E. THOMAS

I, Susan E. Thomas, pursuant to 28 U.S.C. §1746, declare under penalty of perjury that the following are true and based on my personal knowledge:

1.    I am over the age of 18 and am fully competent to make this declaration.

2.    I am the Chief of the Program Implementation Division, which is contained in the in the Office of Civil Rights (OCR), within the United States Department of Commerce ("DOC," "Department," "Agency").

3.    My duties include overseeing the Division responsible for processing formal Equal Employment Opportunity (EEO) complaints filed with the Agency.  This process involves investigating EEO complaints as well as issuing procedural and merit final Agency decisions.

4.    Through my position, I am familiar with the administrative equal employment opportunity ("EEO") process and in particular the administrative EEO activities of Janet Howard.

5.    The OCR developed a computerized system, called "EEO Track" that allows us to access OCR's files on EEO complaints.  These files are maintained in the regular course of business.

Page 1 of 3

6.     I have been asked to provide certain information concerning Ms. Howard's administrative EEO activities relating to a Performance Improvement Plan instituted in November 2007, and a Notice of Proposed Removal issued in February 2008.

7.     The EEO Track records reflect that on February 5, 2008, Ms. Howard filed a formal EEO complaint, Complaint Number 08-67-00033, alleging that the Agency had discriminated against her based on her race, color, sex, national origin, age, disability and in retaliation for her prior EEO activities by subjecting her to a continuing and escalating pattern of harassment to include:

     a.    her placement her on a Performance Improvement Plan (PIP) on November 13, 2007;

     b.    her first-level supervisor repeatedly indicating to her during the PIP period that she would fail the PIP and that he has no objective intention to assist her in successfully competing the PIP; and

     c.    implementing a PIP that contained standards and requirements that are not imposed on other GS-12 Export Compliance Specialists.

8.     On March 6, 2008, Ms. Howard amended Complaint Number 08-67-00033, to include the allegation that the Agency discriminated against her based on her race, color, sex, national origin, age, disability and in retaliation for her prior EEO activities by subjecting her to a continuing and escalating pattern of harassment which also includes issuing her on February 27, 2008  a Notice of Proposed Removal.

9.     Ms. Howard's aforementioned administrative complaint is in its initial stages and no report of investigation has yet been issued in the case.

Further declarant sayeth not.

Susan E. Thomas
Chief, Program Implementation Division
Office of Civil Rights
United States Department of Commerce

March 27, 2008

Date

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANET HOWARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 08-0421 (PLF) |
| | ) |
| CARLOS GUTIERREZ, Secretary, | ) |
| U.S. Department of Commerce, *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |

**[PROPOSED] ORDER**

UPON CONSIDERATION of Plaintiff's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction, and the opposition thereto, it is hereby:

ORDERED that Plaintiff's motion is, in all respects, DENIED.

SO ORDERED:


_____            _____
Date                       PAUL L. FRIEDMAN
                           United States District Judge