IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
COLUMBIA

JANET HOWARD

    Plaintiff,

    v.                                                                                    Civ. No. 08-0421 (PLF)

CARLOS GUTIERREZ,

SECRETARY,                                                                     JURY TRIAL EMAND
U.S. DEPARTMENT OF COMMERCE,

    Defendant.

## PLAINTIFF OPPOSE DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

Pursuant to Fed R. Civ. P.65 and D.C. Local Rule 65, Plaintiff Ms. Janet Howard ("Ms. Howard" or "Plaintiff"), submits this reply brief pro se to OPPOSE Defendant's Motion for Summary Judgment. This response to OPPOSE is an employment retaliation suit brought under federal law prohibiting discrimination and retaliation in federal employment of the Civil Rights Act of 1964, 42 U.S.C. 200e-5 (f) (3); 42 U.S.C. 2000e-16(c) Plaintiff seeks compensatory damages, and other costs.

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this case for immediate action pursuant to Federal Rule of Civil Procedure.

2. Venue us proper in this District pursuant to 28 U.S.C 1981(e) because the defendant resides in this District and a substantial part of the events or omissions giving rise to these claims occurred in this District.

RECEIVED
JUL 23 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

2

Defendant DOC does business in the District of Columbia, the business records of Defendant are maintained in the District of Columbia, many of the unlawful practices described herein occurred in the District of Columbia, and Ms. Howard worked for the Defendant in the District of Columbia.

### PARTIES

3. **Plaintiff Janet Howard** is an African American, female resident in Virginia. At all times Ms. Howard has been an employee of the Defendant. Ms. Howard has worked for DOC since April 1983. Ms. Howard suffers from disabilities, including depression, high blood pressure, and post traumatic stress disorder, which are job-related and for which she is entitled to protection under ADA. Ms. Howard was the sole Class Agent in a class actions, titled (**Howard, et al. v. Donald Evans, Secretary, U.S. Department of Commerce, 1:04 CV-00756).** This class action alleges race discrimination in employment on behalf of Plaintiff's individually, and on behalf of a class of more than 5,000 African American DOC employees.

4. **Defendant Carlos Gutierrez** is the Secretary of the United States Department of Commerce, which is departmental agency in the Executive Branch of the Untied States Government. To accomplish DOC's goal to "foster, promote and develop the foreign and domestic commerce," the Department is divided into fifteen interrelated bureaus. Throughout Plaintiff's employment with DOC, Plaintiff has worked, and continued to work, at the Bureau of Industry & Security ("BIS"), formerly known as the

3

**April 9, 2008** pre trial and scheduled jury trial. Halting all activity pending the outcome of Plaintiff's upcoming trial would have settled all of Plaintiff's 30 EEO complaints, and protected Plaintiff from further damages and loss of property.

8. **February 27, 2008**, Plaintiff received a Letter of Proposed Removal.

9. **March 11, 2008**, Plaintiff filed for Injunctive Relief and Temporary Restraining Order.

10. **March 21, 2008**, Plaintiff received an email from Defendant's Representative suggesting a time to jointly call Judge Friedman's Chambers for conference.

## Violation of Plaintiff's Fifth Amendment Rights
## (Barron v. Baltimore)

11. **March 22, 2008**, Ryan Spear, Judge Friedman Clerk asked DOC Representative had the Department discussed holding off any decision until after the April 9, 2008 Hearing and court trial. Mr. Hudak's response was no.

12. Mr. Spear asked Mr. Hudak if the Agency would halt for an extension of time, was Agency willing to compromise? Mr. Hudak said, Agency was not willing to compromise.

13. Mr. Spears said in other words, Agency's plan is to terminate Ms. Howard unless the Court issues a restraining Order. Mr. Hudak said yes.

14. Mr. Spears ask Mr. Hudak to go back to the Agency and ask them what compromise where they willing to make. He told Mr. Hudak that the Judge

had a trial on the week of the 7th of April, but that does not mean he won't hear the case.

15. Plaintiff explained to Mr. Spears that the written and oral presentation to Glenn Krizay was just a formality, 15 days after making the presentation; Plaintiff would receive a notice of removal. Mr. Hudak agreed.

16. Mr. Hudak said it was an established policy when seeking an employee's removal from Federal Service. Mr. Spears reiterated to Mr. Spears, unless the Judge issues a restraining order, Commerce would go forth.

17. Plaintiff was deprived of life, liberty and property causing her to be punished by being fired from her position of 25 years, without ("due process of law").

18. Mr. Spears said, the Hearing would be a speedy one and, Mr. Hudak should go back and see if Commerce would relent.

19. **March 27, 2008**, Plaintiff presented both Oral and Written Responses to the department.

20. **March 27, 2008**, Doc filed for Summary judgment.

21. **April 7, 2008**, Plaintiff responded to Summary Judgment.

22. **April 9, 2008**, Scheduled Pretrial Hearing

23. **April9, 2008,** Pretrial hearing cancelled. **April 9, 2008**, Hearing to Deny Plaintiff's request for a Temporary Restraining Order and Temporary Injunction was granted..

24. **April 18,2008**, DOC response to removal.

25. **April 21, 2008** at 12:00 Noon, Plaintiff was served separation from service letter.

26. **April 21, 2008** at 2:00 P.M., Plaintiff was in a settlement conference with Judge Kaye regarding Civil Action No. 08-0421 (PLF) Complaint.

## RELATED CASE TESTIMONY
("Case 1:04-cv-01409- (PLF) Filed 8/19/04")
("*Dr. Will's Initial Meeting Regarding Janet Howard (August 2002)*"

27. In August of 2002, Dr. Wills attended a meeting regarding DOC employee Janet Howard's ("Ms. Howard") workplace accommodations. Attendees at this meeting included: (i) Dr. Wills, (ii) Diana Shepard ("Shepard"), a Human Resources representative, (iii) Thomas Andrukonis ("Andrukonis"), Ms. Howard's first line supervisor, and (iv) Elaine Eubanks ("Eubanks"), an administrative nurse.

28. By August 2002, Ms. Howard's reputation as the DOC as a person who speaks out against race discrimination at the DOC was well known.

29. Dr. Wills had never seen Ms. Howard as a patient when he attended the August 2002 meeting about her. Dr. Wills had, however, reviewed Ms. Howard's medical records.

30. In the course of the August 2002 meeting, Shepard stated that management agreed that it had a problem with Ms. Howard and that is was time to develop a strategy to handle that problem.

7

31. During this August 2002 meeting, Shepard accused Janet Howard of being the ringleader of a group of people who met in the library and exchanged information about racial discrimination at the DOC. Shepard referred to this group as "the library crew". Shepard stated that Ms. Howard needed to be gone. She added that the library crew would come to an end after Ms. Howard was gone.

32. After if had become clear that the purpose of the meeting was to develop strategies to handle Ms. Howard, and employee whom management viewed as a problem, Dr. Wills clarified his role to the group. Dr. Will told them that he would assist the group in interpreting medical information, but could not participate in the development of managerial strategies.

33. At this point in the meeting Shepard began, quoting from guidelines in federal regulations and threatened Dr. Wills by saying that, under these regulations he was required to assist Management and Human Resources personnel.

34. Dr. Wills told Shepard that it would be inappropriate, both medically and ethically, for him to assist in developing any strategy related to a DOC employee that would conflict with his role in providing care to a patient. Dr. Wills said that Ms. Howard, as a DOC employee, had a right to visit the Health Unit as a patient and that he could not be placed in a situation where he would be forced to make a medical decision based on a management strategy rather that his medical opinion.

35. During the August 2002 meeting, Dr. Wills learned that Ms. Howard was working in the library and not her office because the conditions in her office were adversely affecting her health. Dr. Wills also discovered that it was management's opinion that Ms. Howard's doctor had not provided adequate documentation to support her working in the library as a reasonable accommodation.

36. Dr. Wills advised the group that the appropriate course of action was for him to evaluate Ms. Howard's situation based on medical facts and his medical expertise, and not on a DOC management strategy. Dr. Wills added that he needed to seek out supporting documentation and information from Ms. Howard's doctors in order to determine whether Ms. Howard's reasonable accommodation request should be granted.

37. Resistant to the idea of re-opening the reasonable accommodation issue, Shepard claimed that if Dr. Wills found documentation supporting Ms. Howard's accommodation request, Ms. Howard would simply be provided with another opportunity to prolong her stay in the library.

38. Shepard said that Ms. Howard had been given sufficient time to get her medical documentation to the DOC. Dr. Wills then stated that he had read Ms. Howard's entire medical record, including reports by her psychiatrist, Dr. Mebane, who believed that Ms. Howard was suffering from occupational-related stress. Dr. Wills believed that in light of Dr. Mebane's medical reports, the DOC's refusal to provide Ms. Howard with reasonable accommodation was unreasonable.

39. Dr. Wills communicated with AspenMed about the issued raised at the August 2002 meeting and his concerns regarding the DOC's handling of Ms. Howard's accommodation request, but received no reply.

**("Ms. Howard's Request to Telecommute (November 2003- February 2004")**

40. Ms. Howard's physician, Dr. Deborah Williams, sent Dr. Wills a letter in November of 2003 noting that Ms. Howard had "refractory hypertension," meaning that her blood pressure did not respond to medications. Refractory hypertension is a serious and often lethal condition. Dr. Williams stated that the DOC should allow Ms. Howard to work from home two days per week in an attempt to decrease her stress level and reduce her blood pressure.

41. On or about November 28, 2003, Dr. Wills wrote a recommendation that Ms. Howard be allowed to telecommute on Mondays and Fridays. Because of the severity of refractory hypertension, Dr. Wills communicated with Shepard several times about the status of Ms. Howard's telecommuting request. Each time, Shepard told Dr. Wills that she would take care of it immediately, but never did.

42. Three months after she made her request to telecommute, Ms. Howard inquired about the status of her request, prompting management to arrange a meeting on February 25, 2004 to discuss the issue.

### ("DOC'S General Counsel Directs Dr. Wills to Change The Medical Report Regarding Ms. Howard")

43. The February 25, 2004 meeting was attended by Dr. Wills, Mitch Benowitz ("Benowitz") of the DOC's General Counsel's Office, Shepard, Andrunokis, and another attorney. Ms. Howard was not invited to attend the February 25, 2004 meeting. The meeting was tense and the people were hostile towards Ms. Howard. Benowitz said that Dr. Wills's letter regarding Ms. Howard's request for accommodation did not represent the best interests of the government. Dr. Wills asked Benowitz to explain what he meant. Benowitz said that he expected Ms. Howard to bring a lawsuit against the DOC for failing to provide her with reasonable accommodations. Benowitz believed that if this case were litigated, Dr. Wills's letter would not help the DOC's case. Benowitz explained that he needed Dr. Wills to change the letter. Dr. Wills responded that he would need to talk to him about this issue privately.

44. During the February 25, 2004 meeting, the discussion turned to whether telecommuting was necessary. Dr. Wills attempted to explain the seriousness of Ms. Howard's condition. Shepard said that they were discussing a person who was leading a major class action litigation against the DOC. At that point, Dr. Wills reminded the DOC management that he was there solely to deal with Ms. Howard's medical issues as they related to her request for accommodation, and that he would not factor the DOC's dislike for Ms. Howard into his recommendation.

11

45. A day or so later, Benowitz emailed Dr. Wills the language that Benowitz believed Dr. Wills should use in his report on Ms. Howard's request to telecommute. Later, during a telephone call with Benowitz, Dr. Wills declined to change his report and incorporate Benowitz's language. Dr. Wills explained that the report was already twelve weeks old and that Human Resource had forwarded it to the employee and her supervisor. Dr. Will told Benowitz that changing the report at this point made no sense and that he could not justify doing so. Dr. Wills made it clear that he would not become an active participant in racially discriminatory actions.

**("Dr. Wills is Terminated Approximately One Month After Refusing To Change His Medical Report Regarding Janet Howard")**

46. On Friday, March 26, 2004, approximately one month after the February 25, 2004 meeting, Jim Valentine ("Valentine"), the liaison between Aspen Med and the DOC, told Dr. Wills that the DOC instructed AspenMed to remove Dr. Wills from the contract.

47. The DOC directed AspenMed to terminate Dr. Wills based on Dr. Wills race and color and because Dr. Wills had:  a) spoken out against racial discrimination at the DOC; b) refused to participate in race discrimination at the DOC; c) refuse to follow the DOC's directives to alter official medical reports of African American employees of the DOC who had spoken out against or filed claims against the DOC for race discrimination; and or d) refused to participate in DOC strategies to handle African American DOC employees who were viewed as problems because they

spoke out against or filed claims against the DOC for race discrimination at the DOC.

48. The Department of Commerce has intentionally, deliberately, willfully, and callously disregarded the rights of Plaintiff.

49. The Department of Commerce has retaliated against Janet Howard in violation of the Civil Rights Act of 1866, 42 U.S.C. 1981 as amended ("Section 1981").

50. The Department of Commerce has retaliated against Janet Howard for speaking out against discrimination at the Department of Commerce and for terminating her employment.

51. The Department of Commerce's violation of Section 1981 injured and damaged the Plaintiff.

52. The Department of Commerce (and/or one or more agents thereof) has conspired to deprive Janet Howard of her rights under the law.

53. The Department of Commerce did combine, associate, agree, and/or mutually undertake a course of action for the purpose of willfully and maliciously injuring Ms. Howard in her reputation, and profession. Defendants knowingly and willingly conspired and agreed among themselves to interfere with Ms. Howard's ability to make a living in the federal workplace. The Defendants acted in concert to harm Ms. Howard through retaliation based on her race (African American) and color (black). Additionally, Defendant retaliated against Ms. Howard for speaking out against discrimination at the Department of Commerce.

54. By reason of the Department of Commerce's conspiracy to discriminate and/or retaliate against Plaintiff and thereby deprive her of her civil rights, Plaintiff is entitled to all legal and equitable remedies available under 42 U.S.C. 1985.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court"

a. Declare and adjudge that the Defendant U.S. Department of Commerce has violated Janet Howard's rights under 42 U.S.C. 1981.

b. Declare and adjudge that Janet Howard's departure from her position as Export Compliance Specialist was in no way based on the performance of her duties as a Compliance Specialist.

c. Declare and adjudge the DOC has violated Ms. Howard's rights under ADA through retaliation.

d. Allow Ms. Howard to telework from home Monday and Friday;

e. Award Ms. Howard damages;

f. Award Ms. Howard compensatory damages, including but not limited to all front and back pay, all annual sick leave lost from 2001 to the present, all monies lost from Ms. Howard's retirement plan during her leave without pay in 2001, 4/25/2008 to present; and all monies spent on medical reports submitted to DOC; and payment for medical treatment since being terminated, cost included in travel, mailing, copying etc.

g. Award Ms. Howard pre-judgment and post-judgment interest to the foregoing sums and;

h.  Award Ms. Howard such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues in accordance with the Rule of this Court.

Dated April 24, 2008          Respectfully submitted,

*Janet Howard*
Janet Howard, Pro Se
P.O. Box 1454
Spotsylvania, VA 22553
Telephone: (540) 895-5779

## CERTIFICATE OF SERVICE

We hereby certify that on this 23 day of July, 2008, a true and correct copy of the above Motion Opposing Summary Judgment was mailed by first class United States mail, postage prepaid, to:

> BRIAN P. HUDAK
> Assistant United States Attorney
> Civil Division
> 555 4th Street, N.W.
> Washington, DC 20530
> (202) 514-7143

Dated: July 24, 2008
Washington, DC

*Janet Howard* (signature)
Janet Howard
P.O. Box 1454
Spotsylvania, VA 22553
(540) 895-5779

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JANET HOWARD,

    Plaintiffs

v.

    Civil Case No. 08-00421968 (PLF)

CARLOS GUTIERREZ, Secretary
U.S. Department of Commerce,

    Defendant

### PROPOSED ORDER

UPON CONSIDERATION of the Plaintiffs' oppositions to Defendant Motion for Summary Judgment, it is hereby:

**ORDERED that** Defendants' Motion for Summary Judgment is **DENIED.**

**SIGNED:**

_____          _____
Date                                                        PAUL L. FRIEDMAN
                                                                       United States District Judge